IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01052-PAB-MJW

ARROW ELECTRONICS, INC., and
ARROW ENTERPRISE COMPUTING SOLUTIONS, INC.,

     Plaintiff(s),

v.

SYNTELLUS DATAWORKS, LLC, and
CURTIS V. CROWDER,

     Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion for Default Judgment [Docket No. 38] filed by plaintiffs Arrow Electronics, Inc. and Arrow Enterprise Computing Solutions, Inc. on April 19, 2013.

## I.  BACKGROUND

Plaintiffs filed this breach of contract action on April 19, 2012 against defendants Syntellus Dataworks, LLC ("Syntellus"), Curtis V. Crowder (an officer of Syntellus), and Doe defendants numbers one through ten.  Docket No. 1.  The following facts are drawn from the second amended complaint [Docket No. 10].

Plaintiffs are distributors of "electronics components and enterprise computing solutions" and sell such products to Syntellus, who re-sells them to end users.  Docket No. 10 at 3-4, ¶¶ 8-11.  On February 19, 2009, plaintiffs entered into a purchase money security agreement with Syntellus.  Docket No. 10 at 4, ¶ 12 and 15-18.  The

agreement gave plaintiffs a security interest in a number of Syntellus' obligations, including all electronic merchandise, goods, and other products listed in Syntellus' purchase order number 200902007.  Docket No. 10 at 15-16, ¶¶ 2-3.  The security agreement also granted plaintiffs a superior priority interest in all Syntellus property and assets.  Docket No. 10 at 5, 17, ¶¶ 14, 7(b).  On September 7, 2011, the parties amended the security agreement to add products sold under purchase order number 201108016.  Docket No. 10 at 21, ¶ 1.

The security agreement provided that Syntellus would instruct end users to mail their payments directly to plaintiffs' post office box and that, if Syntellus received payment from end users, it would immediately transfer those payments to plaintiffs. Docket No. 10 at 5, ¶¶ 15, 17 and 16, ¶¶ 4-5.  Syntellus agreed not to commingle proceeds earned on the orders covered by the security agreement with other proceeds. *Id*.  Defendants received $408,639.80 in payments from end users Knoxville Utilities Board ("Knoxville") and Lockheed Martin ("Lockheed"), either because defendants instructed these users to pay defendants directly or because the end users did so in error.  Docket No. 10 at 6, ¶ 19.  Defendants failed to remit these payments to plaintiffs. *Id*.

At an unspecified time prior to October 9, 2011, Plaintiffs and Syntellus entered into a separate agreement by which plaintiffs agreed to perform marketing services for Syntellus.  Docket No. 10 at 6, 9 ¶¶ 22, 32.  Syntellus breached this agreement by failing to pay $19,875.00 it owed to plaintiffs for marketing services.  *Id*.

On March 15, 2011, Mr. Crowder executed and delivered a personal guaranty (the "guaranty") to plaintiffs, personally guaranteeing Syntellus' obligations**,** in an effort

2

to obtain credit from plaintiffs on behalf of Syntellus.  Docket No. 10 at 7, ¶ 23.  On

October 9, 2011, Mr. Crowder breached the guaranty by refusing to repay plaintiffs for

Syntellus' breach of the security agreement and the marketing services agreement.

Docket No. 10 at 7, ¶ 24.

Plaintiffs assert five bases for relief: breach of contract with respect to the

security agreement, breach of contract on the marketing services agreement, breach of

the personal guaranty (against Mr. Crowder alone), fraud, and conversion.  Docket No.

10 at 7-13, ¶¶ 25-53.  Defendants did not respond to plaintiffs' complaint or otherwise

enter an appearance in this case.  On July 31, 2012, plaintiffs moved for entry of default

[Docket No. 19] against both defendants, which the Clerk of Court granted on August

10, 2012.  Docket No. 32.  On April 19, 2013, plaintiffs moved for default judgment.

Docket No. 38.

Plaintiffs seek a total award of $476,388.28, comprising: $408,639.80 for breach

of the security agreement; $19,875.00 for breach of the marketing services agreement;

$715.00 in costs; $12,170.30 in attorney's fees; and pretrial interest, at the rate of ten

percent per year, in the amount of $34,988.18.  Docket No. 38-2 at 3-5, ¶¶ 10-17.

## II.  STANDARD OF REVIEW

In order to obtain a judgment by default, a party must follow the two-step process

described in Federal Rule of Civil Procedure 55.  First, it must seek an entry of default

from the Clerk of the Court under Rule 55(a).  Second, after default has been entered

by the Clerk, the party must seek default judgment according to the strictures of Rule

55(b).  *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995)

(citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

3

The decision to enter default judgment is "'committed to the district court's sound discretion.'"  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits."  *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation marks and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id*.  It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."  *Id*. at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Seme v. E & H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence.  *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure.  The threat of judgment by default serves as an incentive to meet this standard.").  One such consequence is that, upon the entry of default against defendants, the well-pleaded allegations in the complaint are deemed admitted.  *See Olcott*, 327 F.3d at 1125; *see also* 10A Charles Wright, Arthur Miller & Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010).

4

"Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A WRIGHT & MILLER § 2688, at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation marks and citation omitted).

As the Clerk of Court entered default against defendants on August 10, 2012, the Court deems the well-pleaded facts in Arrow's complaint admitted. *See Olcott*, 327 F.3d at 1125. The Court will proceed to consider whether these facts state a claim that entitles plaintiffs to relief.

## III. DISCUSSION

### A. Breach of Contract

A breach of contract claim has four elements: (1) the existence of a contract; (2) performance by the plaintiff or justification for nonperformance; (3) failure to perform by the defendant; and (4) resulting damage to the plaintiff. *Saturn Sys., Inc. v. Militare*,

252 P.3d 516, 529 (Colo. App. 2011) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

Here, plaintiffs have satisfied the first element with respect to the security agreement and the guaranty by attaching copies of those agreements and by detailing the relevant substantive provisions of those agreements in the complaint.  Docket No. 10 at 15-18, 24-25.  Furthermore, plaintiffs have established that they performed their obligations under the security agreement and the guaranty, Docket No. 10 at 10, 11 ¶¶ 38, 47, and that defendants failed to perform their contractual obligations insofar as they withheld payments they received from end users.  Docket No. 10 at 6-7, ¶¶ 21, 24. Finally, plaintiffs have established that defendants' breach of the security agreement and the guaranty caused damage by depriving them of payments to which they were contractually entitled.  Docket No. 10 at 6, ¶ 20.

However, plaintiffs' allegations regarding the marketing services agreement are vague and conclusory.  Plaintiffs have not provided a copy of the contract nor do they plead any of its relevant terms, such as when the contract was entered into, what services plaintiffs were required to perform, whether and when such services were performed, or how payment was to be calculated.  *See* Docket No. 10 at 6, ¶ 22; *see Stender v. Gerardi*, No. 07-cv-02503-EWN-MJW, 2008 WL 4452117 (D. Colo. Sept. 30, 2008) (plaintiffs failed to state a claim for breach of contract "relating to alleged liquidity or dividend rights because they have not adequately indicated which provisions of which contracts allegedly contain such rights") (citing *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007) ("[t]o plead the legal effect of a contract" in place of its actual language, plaintiffs must "allege the substance of its

6

relevant terms")).

In sum, Arrow has established its entitlement to relief for breach of the security agreement and the personal guaranty, but not the alleged marketing services agreement.  *See Bryson*, 534 F.3d at 1286.

## B.  Fraud

A claim for fraud requires a plaintiff to prove that (1) the defendant knowingly made a false representation of material fact; (2) plaintiff was unaware of its falsity; (3) the representation was intended to induce plaintiff to act; and (4) plaintiff was damaged by acting in reliance on the representation.  *Vinton v. Virzi*, 269 P.3d 1242, 1247 (Colo. 2012).  Under Federal Rule of Civil Procedure 9(b), "fraud or mistake" must be pled with particularity, meaning that a plaintiff must, at the minimum, "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).  Although a plaintiff may plead "[m]alice, intent, knowledge, and other conditions of a person's mind" generally, Rule 9(b) "merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid–though still operative–strictures of Rule 8."  *Ashcroft*, 556 U.S. at 686-87.

Plaintiffs' claim for fraud generally asserts that defendants made false representations in relation to the security agreement and that such representations were made knowingly with the intention of deceiving plaintiffs.  Docket No. 10 at 11,

¶¶ 43-46.  However, plaintiffs do not describe the alleged representations in any detail.

*See id*.  Rather, they state that defendants promised to, but did not, abide by the terms

of the contract, in essence restating their breach of contract claim.  *Id*. at ¶ 43.  Plaintiffs

do not "set forth the time, place, and contents of the false representation[s]" or "the

identity of the party making the false statements."  *See Sikkenga*, 472 F.3d at 727.  As

plaintiffs do not plead their claim for fraud with particularity, they are not entitled to

default judgment on this claim.  *See id*.

### C.  Conversion

A claim for common-law conversion arises from a "distinct, unauthorized act of

dominion or ownership exercised by one person over personal property belonging to

another."  *Itin v. Ungar*, 17 P.3d 129, 135 n.10 (Colo. 2000).  To state a claim for

conversion, a plaintiff must allege that (1) a defendant exercised dominion over

property (2) that belonged to plaintiff; (3) the exercise of control was unauthorized; (4)

plaintiff demanded return of the property; and (5) defendant refused to return it.  *L-3

Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1081 (D. Colo.

2012).

Plaintiffs' complaint establishes the requisite elements of conversion, insofar as

plaintiffs plead that defendants retained payments from end users Lockheed and

Knoxville, to which plaintiffs had legal title under the security agreement; that

defendants did so without plaintiffs' authorization; that plaintiffs demanded remission of

the payments; and that defendants refused this request.  Docket No. 10 at 6, 13 ¶¶ 19,

53.  These contentions are sufficient to state a claim for conversion.  *See Itin*, 17 P.3d

at 135 n.10.  However, plaintiffs' conversion claim fails to the extent it is based on the wrongful withholding of money owed under the alleged marketing services agreement for the same reasons discussed in section III.A above.

### D.  Attorney's Fees

Plaintiffs request attorney's fees in the amount of $12,170.30.  Docket No. 38-2 at 4, ¶ 16.

Under the security agreement, defendants are liable for the "reasonable attorney's fees" incurred in plaintiffs' collection efforts against them.  Docket No. 38-2 at 10, ¶ 10A.  The security agreement further provides that, in the event the plaintiffs receive an award over $100,000.00, they are entitled to receive attorney's fees of $5,600.00 plus two percent of the amount awarded over $100,000.00.  Docket No. 38-2 at 4, ¶ 16.

Plaintiffs have established that they are entitled to an award of $408,639.80 for breach of the security agreement and personal guaranty.  Docket No. 10 at 7, ¶ 24. Under the security agreement, they are thus entitled to an award of $11,772.80 in attorney's fees.

### E.  Prejudgment Interest

Plaintiffs request prejudgment interest of $35,988.18, constituting interest at the rate of ten percent per year calculated from October 9, 2011, the date on which Mr. Crowder denied plaintiffs' demand to pay the amounts owing under the security agreement and personal guaranty, through July 31, 2012, the date on which plaintiffs filed their motion for entry of default judgment.  Docket No. 38-2 at 4-5, ¶ 17.

Under Colorado law, an award of prejudgment interest to a prevailing party is mandatory.  Colo. Rev. Stat. § 5-12-102; *James v. Coors Brewing Co.*, 73 F. Supp. 2d 1250, 1254 (D. Colo. 1999).  Absent "proof of gain from the wrongful retention of money," or a contractual provision according the prevailing party a different rate of interest, creditors shall receive interest "at the rate of eight percent per annum compounded annually for all moneys . . . after they are wrongfully withheld or after they become due . . . to the date judgment is entered."  Colo. Rev. Stat. § 5-12-102(1)(b); *Chaparral Res., Inc. v. Monsanto, Co.*, 849 F.2d 1286, 1291 (10th Cir. 1988) ("If an award of moratory interest damages is justified but there is no proof of gain from the wrongful retention of money, a trial court acts within its discretion in measuring the amount of such damages at the statutory rate of interest.").

As plaintiffs here have provided neither a contractual provision specifying an interest rate above eight percent, nor any evidence of the benefit that defendants accrued in wrongfully withholding the payments owed to plaintiffs, there is no basis for awarding interest at a rate greater than eight percent per year.  *See Chaparral Res.*, 849 F.2d at 1291.  Accordingly, plaintiffs are entitled to an award of $51,843.74, constituting eight percent annual interest on the underlying judgment of $408,639.80 from October 9, 2011 through April 24, 2013.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion for Default Judgment [Docket No. 38] filed by plaintiffs Arrow Electronics, Inc. and Arrow Enterprise Computing Solutions, Inc. is

GRANTED in part and DENIED in part.  It is further

**ORDERED** that judgment shall enter in favor of plaintiffs on their first, third, and fifth claims for relief.  Plaintiffs' second and fourth claims for relief are dismissed without prejudice for failure to state a claim.  It is further

**ORDERED** that plaintiffs are awarded $408,639.80 in damages, $51,843.74 in prejudgment interest, and $11,772.80 in attorney's fees.  It is further

**ORDERED** that, within 14 days of the entry of judgment, plaintiffs may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.


DATED April 24, 2013.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge